# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-386V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| WILLIAM MORRISON, | * | **UNPUBLISHED** |
| | * | |
| Petitioner, | * | |
| | * | Special Master Katherine E. Oler |
| v. | * | |
| | * | Filed: January 26, 2023 |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | Interim Attorneys' Fees and Costs |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

*Anne Carrion Toale*, Maglio Christopher & Toale, Sarasota, FL, for Petitioner
*Adam Muffett*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On March 13, 2018, William Morrison ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that he developed Guillain-Barré syndrome ("GBS") "and/or other injuries" as a result of the Prevnar 13 vaccine he received on September 3, 2015. Pet. at 1.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on August 24, 2022, requesting a total of $143,067.78. ECF No. 67 at 1-2 (hereinafter "Fees App."). Respondent filed

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

a response (hereinafter "Fees Response" or "Fees Resp.") on January 11, 2023, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. Fees Resp. at 2, ECF No. 70.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$139,960.20** in interim attorneys' fees and costs.

## I.     Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

3

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). First, Petitioner's attorneys have been working on Petitioner's case since October 2016. Fees App. at 1. Second, Petitioner has retained two experts at substantial cost. Ex. 79 at 1-3 (showing that Dr. Steinman has billed $32,862.50 and Dr. Sheikh has billed $3,000.00 in this case). This matter is scheduled for an entitlement hearing in March 2023. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020)

4

(recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

**B. Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-3. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted three expert reports from Lawrence Steinman, MD, who is board certified in neurology. Ex. 71 at 2. Dr. Steinman has theorized that the Prevnar 13 vaccine that Petitioner received caused Petitioner's GBS by means of molecular mimicry. Ex. 24 at 5. Dr. Steinman theorized that two components of the Prevnar 13 vaccine, glycerophosphate and CRM protein conjugate, bear sufficient similarity to self antigens in myelin to cause an autoimmune reaction. *Id.* at 7. The autoimmune attack on peripheral nerve myelin results in GBS. *Id.* at 8. This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

**C. Attorneys' Fees**

Petitioner requests a total of $103,556.40 in attorneys' fees.  Fees App. at 1.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2017 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%2

Petitioner's counsel, Ms. Anne Toale, requests a rate of $378.00 per hour for work performed in 2017; $420.00 per hour for work performed in 2019; $445.00 per hour for work performed in 2020; $475.00 per hour for work performed in 2021; and $500.00 per hour for work performed in 2022. Ex. 78 at 34.

Ms. Toale also requests compensation for her colleagues at Maglio Christopher & Toale ("MCT"):

For Mr. Altom Maglio: $362.00 per hour for work performed in 2017; and $400.00 per hour for work performed in 2019. Ex. 78 at 34.

For Ms. Diana Stadelnikas: $359.00 per hour for work performed in 2016; $440.00 per hour for work performed in 2020; and $490.00 per hour for work performed in 2022. Ex. 78 at 34.

For Mr. F.J. Caldwell: $367.00 per hour for work performed in 2017; $385.00 per hour for work performed in 2018; and $400.00 per hour for work performed in 2019. Ex. 78 at 34.

Ms. Toale also requests rates of $135.00 per hour for paralegal work performed in 2016; $145.00 per hour for paralegal work performed in 2017; from $140.00 to $148.00 per hour for paralegal work performed in 2018; from $145.00 to $154.00 per hour for paralegal work performed in 2019; from $145.00 to $160.00 per hour for paralegal work performed in 2020; $165.00 per hour for work performed in 2021; and $170.00 per hour for paralegal work performed in 2022. Ex. 78 at 34-35.

This request is consistent with what I and other special masters have previously awarded Ms. Toale and MCT. *Hendrickson v. Sec'y of Health & Hum. Servs.*, No. 17-006V, 2023 WL 166410, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2023); *Paul v. Sec'y of Health & Hum. Servs.*, No. 19-797V, 2022 WL 17819290, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2022); *Godek v. Sec'y of Health & Hum. Servs.*, No. 19-106V, 2022 WL 2903360, at *3 (Fed. Cl. Spec. Mstr. June 30, 2022); *Cain v. Sec'y of Health & Hum. Servs.*, No. 17-264V, 2022 WL 1299129, at *2 (Fed. Cl. Spec. Mstr. Apr. 5, 2022); *Shingshan Liu v. Sec'y of Health & Hum. Servs.*, No. 10-55V, 2020 WL 1023582, at *5 (Fed. Cl. Spec. Mstr. Jan. 30, 2020); *Fiske v. Sec'y of Health & Hum. Servs.,* No. 17-1378V, 2019 WL 3410031, at *2 (Fed. Cl. Spec. Mstr. May 20, 2019); *Battistone v. Sec'y of Health & Hum. Servs.*, No. 09-878V, 2017 WL 2333627, at *2 (Fed. Cl. Spec. Mstr. May 2, 2017). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

---

7%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
   The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
   The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
   The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
   The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

Finally, Ms. Toale requests compensation for Petitioner's former counsel, Dennis L. Riley, of the Law Office of Dennis L. Riley, Esq., in Blackwood, New Jersey: $185.00 per hour for work performed in 2016, 2017, and 2018.

Mr. Riley is now retired but was formerly admitted to the New Jersey bar.[4] I find no evidence that he has practiced in the Program in any case but the present one. The Fees Application does not specify his level of experience, but his hourly rate of $185.00 falls within the "Less than 4 years of experience in practice" range for 2016, 2017, and 2018. Assuming that this case is the only one he has ever had in the Program, this would be the appropriate level of experience for purposes of calculating reasonable attorney's fees. Accordingly, I find that the requested rate is reasonable, and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

---

[4] Verified using the Attorney Search function at https://portalattysearch-cloud.njcourts.gov, last visited on January 20, 2023.

3. Clerical and Administrative Time

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The invoice for MCT includes numerous examples of clerical and administrative tasks. The overwhelming majority of these entries describe paralegals' efforts to obtain Petitioner's medical records from his various providers, including inquiring about how to submit such requests and following up on requests already submitted. Examples include (but are not limited to):

- April 10, 2017, 0.3 hours: "Draft correspondence to LMA Neurology Consultants requesting medical records. Update file and notes."
- April 19, 2017, 0.1 hours: "Telephone call with Our Lady of Lourdes Medical Center to obtain proper procedure for requesting medical records and verify correct information. Update file accordingly."
- June 3, 2019, 0.2 hours: "Telephone call with South Jersey MS Center at Bromley Neurology regarding outstanding medical records request status; update case notes."

These administrative and clerical tasks in MCT's invoice total approximately 20.9 hours, resulting in $3,095.00 in charges. My colleagues and I have advised Petitioner's counsel several times that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and we have reduced their requested attorneys' fees accordingly. *See, e.g., Reed v. Sec'y of Health & Hum. Servs.*, No. 09-650V, 2019 WL 2500417, at *4 (Fed. Cl. Spec. Mstr. May 21, 2019) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks); *Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, 2020 WL 5090439, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks and leaving tasks blank). Accordingly, I find that a reduction in requested attorneys' fees of $3,095.00 is warranted.

Total attorneys' fees to be awarded: **$100,461.40.**

**D. Reasonable Costs**

Petitioner requests a total of $39,511.38 in costs, which includes obtaining medical records, the Court's filing fee, experts fees for Drs. Steinman and Sheikh, counsel's travel expenses, shipping costs, and WestLaw charges. Ex. 79 at 1-3.

Specifically, Petitioner requests $1,782.34 for medical records requests; $400.00 for the Court's filing fee; $35,862.500 for expert reports; $793.69 for counsel's travel expenses; $69.00 for shipping; and $604.35 for WestLaw charges. Ex. 79 at 1-3. Documentation was provided for the

8

medical record requests, the Court's filing fee, the travel expenses, and the Westlaw charges, and these will be paid in full.

1. Petitioner's Expert Costs for Dr. Lawrence Steinman

Petitioner requests an hourly rate of $550.00 for 59.75 hours of expert work performed in 2021 and 2022, for a total of $32,862.50.

Dr. Steinman received his medical degree from Harvard University in 1973. Ex. 71 at 1. Since 2008, he has held the G.A. Zimmerman Chair as professor of neurological sciences, neurology, and pediatrics. *Id.* Dr. Steinman is board certified in neurology. *Id.* at 2. Dr. Steinman has provided a full accounting of the hours he expended preparing and writing three expert reports totaling 93 pages in length. Ex. 79 at 70, 78.

In the past, I have declined to award Dr. Steinman the requested hourly rate of $550.00. *Noorani v. Sec'y of Health & Hum. Servs.*, No. 16-970V, 2022 WL 780828, at *6 (Fed. Cl. Spec. Mstr. Jan. 20, 2022) (finding that "although Dr. Steinman may be entitled to $550.00 an hour in cases presenting novel theories, a more appropriate rate of compensation in this case is his usual $500.00 an hour."). However, since my decision in *Noorani*, other special masters have granted Dr. Steinman's requested rate of $550.00 per hour. *Mason v. Sec'y of Health & Hum. Servs.*, 2022 WL 4693380, at *3 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (finding that Dr. Steinman's "demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase" from $500.00 per hour to $550.00 per hour); *Anderson v. Sec'y of Health & Hum. Servs.*, No. 20-440V, 2022 WL 3151737, at *3 (Fed. Cl. Spec. Mstr. July 13, 2022) (finding that "Dr. Steinman's expertise in the medical field and long-standing participation in the Vaccine Program" justified an hourly rate of $550.00 even though this was higher than the $500.00 "informal cap on expert fees" in the Program). Accordingly, I find that Dr. Steinman's requested rate of $550.00 is consistent with what he has been awarded for work performed in 2021 and 2022. I therefore grant Dr. Steinman's costs in full.

2. Petitioner's Expert Costs for Dr. Kazim Ali Sheikh

Petitioner requests an hourly rate of $500.00 for six hours of expert work performed in 2019 and 2020, for a total of $3,000.00.

Petitioner did not file a CV for Dr. Sheikh and Dr. Sheikh did not prepare any expert reports. His invoice reflects that he spent five hours reviewing Petitioner's medical records and one hour discussing the case with Petitioner's counsel by telephone. Ex. 79 at 62. Expert fees are compensable in the Program even where no expert report results from the work performed, provided that such fees are reasonable. *See Plescia v. Sec'y of Health & Hum. Servs.*, No. 15-1472V, 2018 WL 6291870, at *2-3 (Fed. Cl. Spec. Mstr. Oct. 31, 2018). Furthermore, Petitioner's request is consistent with what my colleagues and I have awarded Dr. Sheikh for expert work in the past. *Stuart v. Sec'y of Health & Hum. Servs.*, No. 16-940V, 2022 WL 176145, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2022); *Riley v. Sec'y of Health & Hum. Servs.*, No. 16-262V, 2020 WL 1026929, at *3 (Fed. Cl. Spec. Mstr. Feb. 6, 2020); *Shinksey v. Sec'y of Health & Hum. Servs.*, No. 15-713V,

2019 WL 2064558, at *5 (Fed. Cl. Spec. Mstr. May 9, 2019). I find that Dr. Sheikh's expert costs are reasonable and I therefore grant Dr. Sheikh's costs in full.

   3. Travel Expenses

Documentation of the majority of counsel's travel expenses was provided, with the exception of toll road charges totaling $18.10. As these types of expenses are commonly associated with travel and are reasonable, they will be paid in full.

The total costs counsel incurred for travel appear to be reasonable, with one exception. Counsel included a $12.58 charge for an airplane seat upgrade. Ex. 79 at 1. While this charge is nominal, it has consistently been the position of the special masters of this Court that upgraded methods of travel such as first-class airfare, Acela train service, and black car service are not compensable in the Program. *Dixon-Jones v. Sec'y of Health & Hum. Servs.*, No. 14-934V, 2020 WL 6058571, at *4 (Fed. Cl. Spec. Mstr. Sept. 8, 2020) (declining to compensate for an Amtrak Acela ticket); *Sharpe v. Sec'y of Health & Hum. Servs.*, No. 14-065V, 2018 WL 3990867, at *3 (Fed. Cl. Spec. Mstr. July 6, 2018) (declining to compensate for an airline upgrade to "Economy Plus.").

I find that the remaining travel expenses for which counsel provided documentation are reasonable, and they will be paid in full.

   4. Shipping Costs

Petitioner requests compensation in the amount of $69.00 for several shipping charges with Worldwide Express and the U.S. Postal Service, apparently for shipping documents to Petitioner and to some of Petitioner's medical providers. Ex. 79 at 1-3. Counsel provided copies of shipping labels that do not actually document the amount paid for each. Because these costs are typically associated with litigation in the Vaccine Program and are reasonable, they will be paid in full.

Total costs to be awarded: **$39,498.80.**

**III.  Conclusion**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$138,165.70**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and his attorney, Ms. Anne Toale.

A lump sum in the amount of **$1,794.50**, representing reimbursement of Petitioner's interim attorneys' fees in the form of a check jointly payable to Petitioner and his former attorney, Mr. Dennis L. Riley.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.